IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. _____

MANUEL ZELAYA, individually and on behalf of all others similarly situated,

    *Plaintiff*,

v.

NEWPORT MARKETING, LLC, a Florida limited liability company, NEWPORT HOSPITALITY, LLC, a Florida limited liability company, and NEWPORT VACATIONS MANAGER, LLC, a Florida limited liability company,

    *Defendants*.

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Manuel Zelaya brings this class action complaint against Defendants Newport Marketing, LLC, Newport Hospitality, LLC, and Newport Vacations Manager, LLC (collectively "Defendants"), to stop Defendants' practice of making unsolicited calls to telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.    Defendants own, operate, and market the Newport Beachside Hotel & Resort in Miami, Florida. Specifically, Defendants sell and maintain time-share rentals at the Newport Beachside Hotel & Resort, as well as operate a traditional hotel on the same premises.

2.    In an effort to generate new consumer leads for their time-share business,

1

Defendants made (and/or had third parties make on their behalf and at their direction), thousands of telephone calls to consumers nationwide utilizing an automatic telephone dialing system in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3. The TCPA was enacted to protect consumers from unsolicited commercial phone calls exactly like those alleged in this case. Defendants made these calls despite the fact that neither Plaintiff Zelaya, nor the other members of the putative Classes, ever provided their telephone numbers to Defendants or any other entity for any purpose, and never provided Defendants with their consent to be called. Defendants likewise increased the problematic nature of their calls by continuing to call consumers after receiving requests to cease any further contact.

4. By making the phone calls at issue in this Complaint, Defendants caused Plaintiff and the other members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls.

5. In response to Defendants' unlawful conduct, Plaintiff brings this lawsuit and seeks an injunction requiring Defendants to cease all unsolicited calling activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6. Plaintiff Manuel Zelaya is a natural person and citizen of the State of Florida.

7. Defendant Newport Marketing, LLC is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 3850 Hollywood Boulevard, Suite 400, Hollywood, Florida 33021. Newport Marketing is a limited

liability company whose sole member is Defendant Newport Vacations Manager, LLC. Additionally, Newport Marketing is the primary marketer for the Newport Beachside Hotel & Resort. Newport Marketing does business throughout the United States, the State of Florida and in this District.

8. Defendant Newport Hospitality, LLC is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 3850 Hollywood Boulevard, Suite 400, Hollywood, Florida 33021. Newport Hospitality is a limited liability company whose sole member is Defendant Newport Vacations Manager, LLC. Defendant Newport Hospitality holds the lease for the Newport Beachside Hotel & Resort. Newport Hospitality does business throughout the United States, the State of Florida and in this District.

9. Defendant Newport Vacations Manager, LLC is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 3850 Hollywood Boulevard, Suite 400, Hollywood, Florida 33021. Newport Vacations Manager is the sole member of Defendants Newport Marketing and Newport Hospitality. Newport Vacations Manager does business throughout the United States, the State of Florida and in this District.

10. Defendants are all closely associated and interrelated with non-party entities Five Seas Investors, Inc. and Newport Operating Corporation. The former owns the property on which the Newport Beachside Hotel & Resort sits, while the latter was assigned the lease to that property by Five Seas Investors. Subsequently, Newport Operating Corporation assigned the lease to Defendant Newport Hospitality. Five Seas Investors, Newport Operating Corporation, and all three Defendants share the same corporate address, and all five entities are directly associated with non-party individuals Robert Cornfeld and Jeffery Cornfeld. The Newport

Beachside Hotel & Resort is located at 16701 Collins Avenue, Sunny Isles Beach, Florida 33160.

11. All three Defendants work jointly and cooperatively to maintain and promote their resort and time-share properties, and likewise, worked jointly to promote those properties through the telemarketing calls at issue in this case. Each Defendant benefited from the telemarketing calls in an equal manner.

## JURISDICTION AND VENUE

12. This Court has federal question jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.

13. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District, the conduct and events giving rise to Plaintiff's claims arose in substantial part in this District, and Defendants are headquartered in this District. Venue is additionally proper because the Newport Beachside Hotel & Resort is located in this District.

## COMMON FACTUAL ALLEGATIONS

14. Defendants made (or had made on their behalf) telephone calls to Plaintiff's and the members of the Classes' telephones without consent. Defendants have made thousands of calls through the phone numbers (302) 394-6888, (954) 334-3110, and (305) 260-6112, among others.

15. In making unsolicited calls to the telephones of the Classes, Defendants utilized an "automated dialing system" that places outbound calls automatically through the use of a computerized or other mechanical process.

16. Once a call is answered, the telemarketer proceeds with the intended purpose of

the call: promoting Defendants' resorts and time-share offers. Specifically, the telemarketers promote the Newport Beachside Hotel & Resort, located in Miami, Florida, and in particular, promote a presentation selling Defendants' time-shares at the Newport Beachside Hotel. The telemarketer informs the call recipients that, if they attend, they will qualify for a significantly discounted vacation package.

17. The Newport Beachside Hotel & Resort is owned, operated, and/or marketed by Defendants, along with interrelated non-party entities.

18. Defendants repeatedly made (or directed to be made on their behalf) unsolicited phone calls to Plaintiff's and the other putative members of the Classes' telephones in violation of the TCPA.

19. Neither Plaintiff Zelaya, nor the other members of the putative Classes, ever consented to have Defendants make phone calls to them.

20. Based on the fact that neither Plaintiff nor other members of the putative Classes ever consented to receive calls from Defendants, and that they did not provide their phone numbers to Defendants in any capacity, Defendants only could have obtained those telephone numbers by purchasing lists of phone numbers from a third party and/or by simply dialing numbers at random.

**FACTS SPECIFIC TO PLAINTIFF ZELAYA**

21. In the previous three years, Defendants made, or had made on their behalf, at least eight calls to Plaintiff from various phone numbers, including (302) 394-6888, (954) 334-3110, and (305) 260-6112. All of the calls were made to Plaintiff's cellular telephone. Plaintiff's cellular telephone number has been registered on the National Do Not Call Registry since 2007.

5

22. Plaintiff first began receiving calling from Defendants in October 2010, and received subsequent calls in April 2011, May 2011, and June 2011. On June 8, 2011, Plaintiff contacted Defendants and spoke with a hotel manager, informed him of the ongoing and unwanted telemarketing calls, and requested that they stop.

23. Notwithstanding these requests, Defendants called Plaintiff again in August 2011. Thereafter Plaintiff received a communication from Defendants' counsel that indicated that he would no longer receive telemarketing calls from Defendants. However, again, Plaintiff received numerous additional calls from Defendants.

24. For example, on January 25, 2012, Defendants called Plaintiff and informed him that he was the "winner" of a promotional package that included a free trip to Orlando or Las Vegas. The telemarketer additionally informed Plaintiff that the offer related to a promotion to celebrate Newport's 40th anniversary and its recent extensive renovation.

25. Plaintiff received a second call from Defendants on that very same day that repeated the "promotional offer," but adding that both Visa and MasterCard sponsored the offer. The telemarketer also informed Plaintiff that to receive the offer Plaintiff needed to attend a 90-minute tour of Newport Beachside Hotel and Resort and that Plaintiff should contact Newport's reception manager Gabriela Rojas.

26. The following day, Plaintiff contacted Defendants and informed Defendants that they were violating the TCPA, and specifically requested that they no longer place telephone calls to him. On January 27, 2012, legal counsel for Defendants contacted plaintiff and indicated that (1) Newport subscribed to the Do Not Call Registry; (2) that Plaintiff's name had been added to Newport's internal do-not call list; and (3) that Newport had circulated Plaintiff's information to its third party independent contractors who were authorized to make such calls to

6

be placed on their internal do-not call lists.

27. On February 9, 2012, Defendants placed yet another call to Plaintiff's cellular telephone, this time from (305) 260-6112. The telemarketer told Plaintiff that he was the winner of an award consisting of a free dinner package at Hotel Kitchen VIP 305, a restaurant in the Newport hotel, and that to claim the award Plaintiff, he needed to visit the hotel.

28. Defendants placed additional calls to Plaintiff on March 28th and March 31st.

29. Each time Defendants called Plaintiff, he informed them that he as listed on the National Do Not Call Registry, he asked Defendants to place his information on their internal do not call list, and asked them to mail him a copy of their TCPA/Do-Not-Call policy.

30. Defendants never provided Plaintiff with a copy of their TCPA/Do-Not-Call policy, as requested.

31. Defendants made, or had made on their behalf, the calls to Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

32. Plaintiff did not submit his phone number to Defendants or any other entity that stated, directly or indirectly, that he would receive phone calls from Defendants, let alone phone calls promoting time-share or resort opportunities.

33. Plaintiff never consented to, requested, or otherwise desired or permitted Defendants to make telephone calls to his cellular phone, nor did Plaintiff provide Defendants or their agents with his cellular telephone number.

34. Defendants made, or had made on their behalf, the same (or substantially the same) telephone calls *en masse* to a list of telephone numbers or randomly generated phone numbers.

35. Plaintiff's experience is corroborated by numerous consumer complaints appearing online, which indicate that Defendants placed calls to consumers without permission on a repeat basis.

36. Defendants each were aware that the above-described telephone calls were being made either by them directly, or made on their behalf, and that the telephone calls were being made to consumers who had not consented to receive them.

## CLASS ALLEGATIONS

37. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and three classes (the "Classes") defined as follows:

> **Newport Call Class**: All persons in the United States who (1) received one or more calls on their cellular telephones; (2) made by or on behalf of Defendants; (3) that promoted Defendants' resorts and/or time-shares; and (4) who never provided their prior express consent to receive such calls.
>
> **Newport Opt-Out Class**: All persons in the United States who (1) received one or more calls on their cellular telephones; (2) made by or on behalf of Defendants; (3) that promoted Defendants' resorts and/or time-shares; (4) who expressly indicated to the caller that he or she no longer wished to receive telephone calls from or made on behalf of Defendants; and (5) who thereafter received subsequent calls from or on behalf of Defendants.
>
> **Newport Do Not Call Class**: All individuals in the United States (1) who had his or her cellular or landline telephone number(s) registered with the National Do Not Call Registry; (2) who never consented to be contacted by Defendants; (3) to whom Defendants made more than one telephone call; (4) promoting Defendants' products or services; (5) within any 12-month period.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors;

8

(3) persons who properly execute and file a timely request for exclusion from the Classes; (4) the legal representatives, successors, or assigns of any such excluded persons; (5) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants; and (6) all persons who accepted a monetary payment in full satisfaction of their claims as reflected in a letter from Defendants' counsel dated March 18, 2013.

38. **Numerosity**: The exact number of the members of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through Defendants' records.

39. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

40. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    whether Defendants' conduct violated the TCPA;

(b) whether the equipment used by Defendants to make the unsolicited calls at issue in this case was an automatic telephone dialing system;

(c) whether Defendants systematically made phone calls to persons who did not previously provide Defendants with their prior express consent to receive such phone calls;

(d) whether Defendants made telephone calls to Newport Opt-Out Class members after they expressly requested to no longer receive telephone calls from Defendants;

(e) whether Defendants made more than one telephone in any 12-month period to members of the Newport Do Not Call Class; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

42. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I

**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff, the Newport Call Class, and the Newport Opt-Out Class)**

43.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

44.     Defendants made thousands of unsolicited phone calls to cellular telephone numbers belonging to Plaintiff and other members of the Newport Call and Newport Opt-Out Classes using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

45.     Specifically, Defendants utilized an automatic telephone dialing system to make telephone calls to Plaintiff and the other members of the Newport Call and Newport Opt-Out Classes without human intervention. Defendants' equipment qualifies as an automatic telephone dialing system because it is equipment, combining software and hardware aspects, that has the capacity to store or produce numbers and dial numbers at random, in sequential order, or from a database of numbers, and likewise has the capacity to make telephone calls, that, when answered, create a new outbound call and direct the called party to a live operator. Defendants' equipment can accomplish all these functions without human intervention.

46.     Defendants' phone calls were made to the cellular telephones of Plaintiff and other members of the Newport Call Class without those numbers being provided to Defendants or any other entity connected to Defendants, and without obtaining their express consent to make the calls.

47. Defendants' phone calls were also made to the cellular telephones of Plaintiff and other members of the Newport Opt-Out Class after they had expressly requested to no longer receive any future calls from Defendant, and therefore, any calls made following such a request were done without prior express consent.

48. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' illegal conduct, Plaintiff and the other members of the Newport Call and Newport Opt-Out Classes suffered actual damages in the form of monies paid to receive unsolicited calls on their cellular phones and, under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the Act.

49. Should the Court determine that Defendants' misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Newport Call and Newport Opt-Out Classes.

## COUNT II

### Violation of the TCPA, 47 U.S.C. § 227(c)(5)
### (On behalf of Plaintiff and the Newport Do Not Call Class)

50. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

51. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may," bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

52. The Telephone Consumer Protection Act's implementing regulation provides that "No person or entity shall initiate any telephone solicitation" to "[a] residential telephone

subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

53.     47 C.F.R. §64.1200(e), provides that §64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03- 153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which Report and Order in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

54.     47 C.F.R. § 64.1200(d) further provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a

telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

55. Defendants violated § 64.1200(c) by initiating telephone solicitations to wireless and residential telephone subscribers, such as Plaintiff and the Newport Do Not Call Class, who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested not to receive calls from Defendants, as set forth in § 64.l200(d)(3).

56. Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff and members of the Newport Do Not Call Class within a 12-month period, without their prior express consent to receive such calls. Plaintiff and members of the Newport Do Not Call Class never provided any form of consent, at any time, to receive telephone calls from Defendants.

57. Plaintiff and members of the Newport Do Not Call Class expressly requested that Defendants no longer place calls to them, after which Defendants failed to place Plaintiff and members of the Newport Do Not Call Class on Defendants' internal do-not-call list (or failed to do so within its stated seven day time period).

58. Defendants violated § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Newport Do Not Call

Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

59. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Newport Do Not Call Class received more than one telephone call within a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Newport Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

60. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to § 227(c)(5), treble the amount of statutory damages recoverable by the members of Plaintiff and the Newport Do Not Call Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Manuel Zelaya, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Manuel Zelaya as the representative of the Classes, and appointing his counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all unsolicited calling activities, and otherwise protecting the interests of the Classes;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  May 21, 2013 | **MANUEL ZELAYA**, individually and on behalf of all others similarly situated, |
|  | By:  *s/ Scott D. Owens*        One of Plaintiff's Attorneys |

Rafey S. Balabanian
Ari J. Scharg
Christopher Dore
J. Dominick Larry*
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
rbalabanian@edelson.com
ascharg@edelson.com
cdore@edelson.com
nlarry@edelson.com

*Pro hac vice* admission to be sought

Scott D. Owens, Esq.
LAW OFFICE OF SCOTT D. OWENS, ESQ.
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
Telephone: (954) 589-0588
scott@scottdowens.com

Stefan Coleman, Esq. (#30188)
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
law@stefancoleman.com