**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 13-Civ-61139-Scola/Seltzer**

MANUEL ZELAYA, individually and on behalf of
all others similarly situated,

      Plaintiff,

v.

NEWPORT MARKETING, LLC, a Florida limited
liability company, NEWPORT HOSPITALITY,
LLC, a Florida limited liability company, and
NEWPORT VACATIONS MANAGER, LLC, a
Florida limited liability company,

      Defendants.

---

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR**
**SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. Rule 12(b)(6) and Rule 56 and S.D. Fla. Local Rule 56.1,

Defendants Newport Marketing, LLC, Newport Hospitality, LLC and Newport Vacations

Manager, LLC (collectively, "Defendants") hereby file their Motion To Dismiss the Complaint

for failure to state a claim upon which relief can be granted or, in the alternative, Motion for

Summary Judgment in their favor, and Incorporated Memorandum of Law, and in support

thereof state:

**MEMORANDUM OF LAW**

**I.  INTRODUCTION AND SUMMARY OF ARGUMENT**

This lawsuit arises from actions by entities who are not parties to this case.  Plaintiff has

sued Defendants under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)

("TCPA"), for alleged outbound calls that Plaintiff claims he received, but that Defendants

indisputably did not make.  Simply put, Defendants had no involvement in, or responsibility for, the core conduct at issue in the lawsuit upon which they are being sued.  Accordingly, as explained below, Plaintiff's claims against these extraneous defendants, predicated on generic, conclusory allegations, cannot pass muster under the law or the undisputed facts.

Indeed, as recently as May of this year, this Court confirmed, on substantially identical facts, that the statutory framework under which Plaintiff sues here compels dismissal.  This Court should dismiss with prejudice all claims against Defendants or, in the alterative, grant summary judgment in Defendants' favor.

In Count One of the Complaint, Plaintiff alleges a violation of Section 227(b)(1)(A) of the TCPA, which imposes liability on a "person" who "make[s]" an unlawful "call" under the Act.  47 U.S.C. § 227(b)(1)(A).  But as Plaintiff himself recognizes in his Complaint, "third-party independent contractors" actually conducted the actions at issue.  Defendants' written agreements with those independent contractors – agreements this Court may consider on a motion to dismiss because they are central to Plaintiff's claims and their authenticity is undisputed – confirm what Plaintiff alleges:  independent contractors, not Defendants, made the calls in question.  Plaintiff may mean to proceed on the theory that Defendants can be held vicariously liable under Section 227(b)(1)(A) for the conduct of these third parties but that theory is squarely foreclosed by a published order of this very Court.  As this Court ruled just a few months ago, Section 227(b)(1)(A)'s restrictions apply only to the entity that actually makes the call.  As such, Count One of the Complaint must be dismissed with prejudice.

In Count Two of the Complaint, Plaintiff alleges violation of Section 227(c)(5) of the Act.  While that section, unlike Section 227(b)(1)(A), incorporates traditional common law standards of vicarious liability, Plaintiff does not and cannot allege facts that would satisfy that

standard.  To establish vicarious liability, a plaintiff is required to show much more than simply a business relationship.   The law imposes liability on a party for the acts of another in circumstances where the liable party <u>controlled</u> the unlawful conduct of the acting party. Plaintiff does not allege – and in light of Defendants' agreements with independent contractors – cannot plausibly allege, that Defendants had the right to control the manner and means by which outbound calls were made.  Because Plaintiffs cannot allege the requisite relationship between Defendants and the independent contractors actually responsible for the outbound telephone calls, any attempt to impose vicarious liability fails as a matter of law.  Accordingly, Count Two of the Complaint must likewise be dismissed with prejudice.

If the Court determines that it cannot consider Defendants' contracts on a motion to dismiss, the Court should grant Defendants' alternative motion for summary judgment on all claims.  As Defendants' contracts and the supporting affidavits confirm, Defendants did not make the calls at issue, did not have the right to control the manner in which the calls were made, and in practice did not control those calls.  Among other things, Defendants did not know, and could not know, whether independent contractors would use an autodialer or similar technology, or whether independent contractors would use such technology to place calls to persons on the National Do Not Call Registry, or in any other manner that ran afoul of the TCPA.  Indeed, as the contracts made clear, the independent contractors agreed to comply with the TCPA, and further agreed that they alone were responsible for ensuring compliance with the Act.  Because Plaintiff has no evidence, and can furnish no evidence, to contravene these basic facts, Defendants are entitled to summary judgment.

## II.  PLAINTIFF ALLEGES THAT THIRD-PARTY CONTRACTORS – <u>NOT</u> DEFENDANTS – MADE THE CALLS AT ISSUE

Plaintiff alleges that, in October 2010, he began receiving unsolicited calls on his cellular telephone regarding Newport Beachside Hotel & Resort.  Complaint ¶¶ 21-22.[1]  Plaintiff does not identify specifically who made the calls, instead hedging with a broad, conclusory allegation that either Defendants or third parties on Defendants' behalf made them, using an automated dialing system.  Id. ¶ 15.  Yet Plaintiff further acknowledges that he has been advised that third parties with whom Defendants contracted in fact made the calls.  More specifically, Plaintiff alleges that Defendants provided his contact information to "third party independent contractors," whom Defendants "authorized" to make the calls at issue.  Id. ¶ 26.  Plaintiff has not named any of these third-party independent contractors as defendants in this action.  Plaintiff does not allege that Defendants authorized these third party contractors to make unsolicited calls to persons on the National Do Not Call Registry.  Nor does Plaintiff allege that Defendants exercised any supervisory control over the manner and means by which these third-party independent contractors made the calls.

The relationship between these third parties and Defendants is limited.  Only one Defendant – Newport Marketing – actually contracted with third parties and, as the contracts between them demonstrate,[2] Newport Marketing exercised no supervisory control over their

---

[1] Defendants own and operate the Newport Beachside Hotel & Resort, a mixed-use timeshare and traditional hotel resort in Miami, Florida. Complaint ¶ 1.  Plaintiff alleges that Defendant Newport Marketing, LLC ("Newport Marketing") is the "primary marketer" for the hotel.  Id. ¶ 7.  Plaintiff alleges that Defendant Newport Hospitality, LLC ("Newport Hospitality") holds the lease for the hotel.  Id. ¶ 8.  Plaintiff alleges that Defendant Newport Vacations Manager, LLC ("Newport Vacations") is the sole member of Newport Marketing and Newport Hospitality.  Id. ¶ 9.

[2] Contracts between Newport Marketing and third-party independent contractors are attached as Exhibits 1 – 4 to the concurrently filed declaration of Steven Hurowitz ("Hurowitz Decl.").  In resolving a motion to dismiss, the Court may consider, without converting the motion into one

independently-conducted marketing campaigns.  The contracts explicitly provide that the third

parties are "independent contractors."  Hurowitz Decl., ¶ 5, Ex. 1 § 10; Ex. 2 § 3; Ex. 3 § 3; Ex. 4

§ 9.  The contracts further specify that the independent contractors must comply – and are alone

responsible for ensuring such compliance – with all applicable rules and regulations, including

the TCPA.  For instance, the version of the contract most often used by Newport Marketing

requires the independent contractors to "agree[] to comply with, and to train its employees to

comply with, all applicable state and federal laws and regulations."  *See* Hurowitz Decl., Ex. 1, §

6(a).  This contract further requires the independent contractor to "perform its duties . . . in

compliance with all U.S., federal, state or local government laws, rules or regulations,

specifically to include but not be limited to:  ... the Telephone Consumer Protection Act (47

U.S.C. § 227, 47 C.F.R. Part 64)."  *See id.* § 6(d).  This contract further attaches a "DO NOT

CALL POLICY" setting forth procedures to comply with the TCPA.  *See id.*, Ex. A.  Other

versions of the contract require the independent contractors to "represent[] and warrant[]" that

their activities "be in compliance with all applicable laws and regulations."  *See* Hurowitz Decl.,

Ex. 2, §§ 1.6(a), (e); Ex. 3, §§ 1.6(a), (e).  This same contract requires the independent

---

for summary judgment, any document that is incorporated by reference in the Complaint, and
any document that is "(1) central to the plaintiff's claim and (2) undisputed . . . [,] mean[ing] that
the authenticity of the document is not challenged."  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th
Cir. 2005).  "[C]entral to the plaintiff's claim" means that the issue established by the attached
document lies "at the very heart" of the plaintiff's claim.  *Id.*  Here, Newport Marketing's
contracts with third parties lie at the heart of Plaintiff's claim because, under the statutory
scheme of the Act, Plaintiff must establish that Newport actually "makes" the calls at issue.
Because these contracts demonstrate that the "third party independent contractors" referenced in
the Complaint were the entities actually making the calls, these contracts go to the heart of
Plaintiff's claim and may be considered in connection with this motion.  *See Bickley v. Caremark
Rx, Inc.*, 361 F. Supp. 2d 1317, 1323 (N.D. Ala. 2004) *aff'd*, 461 F.3d 1325 (11th Cir. 2006) ("If
an allegation in the Complaint is based on a writing and the writing contradicts the allegation, the
writing controls."); *see also In re Fontainebleau Las Vegas Contract Litig.*, 716 F. Supp. 2d
1237, 1240 n.4 (S.D. Fla. 2010) *aff'd sub nom. Ave. CLO Fund Ltd. v. Bank of Am., NA*, 709
F.3d 1072 (11th Cir. 2013) ("To the extent the central documents contradict the general and
conclusory allegations of the pleading, the documents govern.").

contractors to "comply with applicable law and commit no act, which violates any local, state or federal law." *See* Hurowitz Decl., Ex. 2, § 3.1, Ex. 3, § 3.1. Another version of the contract provides that the independent contractor "shall perform its business activities in compliance with all federal, state or local government laws, rules, or regulations." *See id.*, Ex. 4, § 1(g).

The contracts provide Newport Marketing no right to control the manner or means by which the contractors would make outbound calls. The contracts do not specify what technology is to be used in making the calls. Nor do the contracts specify what procedures are to be followed in determining what telephone numbers may be dialed, other than that such procedures comply with the TCPA. *See* Hurowitz Decl., Exs. 1-4. In short, the relationships between these third parties and Defendants is limited and does not extend liability for these third parties' conduct to Defendants.

### III. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. To survive dismissal, a plaintiff must plead claims that are not just conceivable, but "plausible" on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Furthermore, "[a]lthough notice pleading does not require a plaintiff to specifically plead every element of his cause of action, a complaint must still contain enough information regarding the material elements of a cause of action to support recovery

under some 'viable legal theory.'"  *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011).

With respect to a motion for summary judgment, under Rule 56(c), Fed. R. Civ. P., summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Although the evidence and any inferences to be drawn from it must be viewed in the light most favorable to the non-moving party, *Celotex v. Catrett,* 477 U.S. 317 (1986) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), there is no genuine issue of material fact if the record taken as a whole does not lead a rational trier of fact to find for the non-movant.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Co*., 475 U.S. 574 (1986).  A dispute about a material fact is "genuine" only where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248. Importantly, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Fed. R. Civ. P. 56] – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2)

## IV.  STATUTORY BACKGROUND

Congress enacted the Telephone Consumer Protection Act of 1991 to regulate interstate telemarketing practices and curb intrusive abuses of telephone technology.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).  Two provisions of the Act are at issue here.  First, Section 227(b)(1)(A) of the Act restricts telemarketing campaigns made with autodialer technology.  By its terms, the provision applies only to those persons who "make" the "call" in violation of the statute:

> It shall be unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular

Case 0:13-cv-61139-RNS   Document 24   Entered on FLSD Docket 09/03/2013   Page 8 of 21

telephone ... or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).  Congress provided a private right of action for enforcement of these provisions under Section 227(b).  The right of action permits "a person or entity" to sue for a "violation" of Section 227(b) or its regulations, but it does not provide any extension of liability on a vicarious or indirect basis:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State ... (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for [damages], or (C) both such actions.

47 U.S.C. § 227(b)(3).

Second, Section 227(c) of the Act regulates unwanted "telephone solicitations" to "residential telephone subscribers" through the Do Not Call registry.  47 U.S.C. § 227(c).  Congress provided a private right of action for enforcement of this provision under Section 227(c)(5).  The right of action permits a "person" who has received more than one telephone call within any 12-month period "by or on behalf of the same entity" to sue for a violation of Section 227(c)(5) or its regulations.  Section 227(c)(5) also expressly provides for an affirmative defense if the defendant engages in sufficient efforts to avoid telemarketing campaigns that violate the statute:

> It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection.

47 U.S.C. § 227(c)(5).

WEST\241923122.3                                        - 8 -

## V.  ARGUMENTS AND AUTHORITIES

**A.**     <u>**The Complaint Should Be Dismissed For Failure To State A Claim**</u>

     *1.*      *Plaintiff Does Not And Cannot Allege That Defendants Made The Calls At Issue In Violation Of 47 U.S.C. § 227(b)(1)(A)(iii)*

Plaintiff's First Cause of Action for violation of Section 227(b)(1)(A)(iii) fails for a very basic reason.  Neither Section 227(b)(1)(A) nor the accompanying private right of action provided by Section 227(b)(3) mentions liability against any other party other than the "person" who actually "make[s]" the call.  47 U.S.C. § 227(b)(1)(A); *id.* § 227(b)(3); *see also Osorio v. State Farm Bank, F.S.B.*, 859 F. Supp. 2d 1326, 1329 (S.D. Fla. 2012) (essential element of claim is that defendant called plaintiff); *Knutson v. Reply!, Inc.*, No. 10-CV-1267 BEN WMC, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011) (to allege a claim under § 227(b)(1)(A), plaintiff must plead that defendant "made" the call).  *As Paragraph 26 of the Complaint effectively concedes, none of the Defendants actually made any of the calls in question.* Instead, Defendants engaged third parties – whom Plaintiff admits were "independent contractors" – to conduct the campaign at issue.  Under the plain terms of the statute, the fact that none of the Defendants made any of the calls mandates dismissal, with prejudice, of Plaintiff's First Cause of Action.

While Plaintiff conclusorily alleges that these independent contractors made calls on Defendants' "behalf," any attempt to impose vicarious or third-party liability under Section 227(b)(1)(A) is futile.  The plain language and structure of the TCPA make clear that indirect theories of liability are not cognizable under § 227(b)(1)(A).  While the Act elsewhere refers to calls made "by or on behalf of" an entity, *see* 47 U.S.C. § 227(c)(5), that same language is conspicuously absent from Section 227(b)(1)(A).  "[I]n enacting the TCPA, Congress wrote precisely." *Int'l Science & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1152 (4th

Cir. 1997), *abrogated on other grounds by Mims*, 132 S.Ct. at 747.  Courts do not "presume to ascribe" such textual differences to "a simple mistake in draftsmanship" by Congress.  *Russello v. United States*, 464 U.S. 16, 23 (1983).  Obviously, Congress knew how to draft a provision under the TCPA imposing vicarious liability when it wanted to; its failure to do so in this instance indicates that Congress intended that Section 227(b)(1)(A) **not** impose vicarious liability.  *See Keane Corp. v. United States*, 508 U.S. 200, 208 (1993) ("where Congress includes particular language in one section of a statute but omits it in another ... it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

This reading of the TCPA was recently confirmed by this very Court.  Based on Congress' decision to omit the "by or on behalf of" language from Section 227(b)(1)(A), this Court in *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV, 2013 WL 1899616 (S.D. Fla. May 8, 2013) rejected an attempt by plaintiff to impose vicarious liability, opting instead to "employ the statute as written and find that only those who make calls in violation of section 227(b)(1)(A) may be held liable."  *Id.* at *13.   This Court adopted that reading notwithstanding a FCC Ruling to the contrary, explaining that the agency's interpretation was not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) because "Congress has ... directly spoken on the issue."  *Id.*  As this Court observed, a federal agency is not authorized to add language from one subsection to another where Congress deliberately chose not to do so itself.  *Id.*[3]

---

[3] After granting summary judgment in favor of the Defendants in *Mais*, this Court certified its order for interlocutory review under 28 U.S.C. § 1292(b) to the United States Court of Appeals for the Eleventh Circuit.  2013 WL 1899616, at *25.  Among the questions this Court certified was whether the FCC's contrary interpretation with respect to vicarious liability is entitled to *Chevron* deference.  The Eleventh Circuit has not yet issued an opinion on the matter and Defendants are unaware of any federal appellate court subsequent to *Mais* that has adopted an interpretation of Section 227(b)(1)(A) inconsistent with this Court's reading of the statute.

Other federal courts across the country have reached similar conclusions.  *See Zerson v. PT Ins. Group*, No. 11 C 7919, 2012 WL 5936286 (N.D. Ill. Nov. 27, 2012) (analyzing junk fax TCPA claim under § 227(b)(1)(C) and refusing to impose liability on the entity that did not send the alleged fax despite paying a third party to do so); *cf. Zhu v. Dish Network, LLC*, 808 F. Supp. 2d 815 (E.D. Va. 2011) (concluding that Virginia's statutory analog to the TCPA did not impose liability on the provider whose independently controlled telemarketers violated the statute).  In *Mais*, this Court gave full effect to Congress' purposeful decision to include or exclude specific language within particular subsections of the statute, including Congress' choice to impose "on behalf of" liability for violations of the Act's do-not-call restrictions, but not for violations of the autodialer provision.  The Court should do so here again and dismiss Count I of the Complaint.[4]

### 2.    *Plaintiff Fails To State A Violation Of 47 U.S.C. § 227(c)(5)*

Plaintiff's Second Cause of Action for violation of the TCPA's do-not-call restrictions should also be dismissed.   Under Section 227(c)(5), "Congress specifically provided for vicarious liability" by inserting the "on behalf of" language.  *Mais*, 2013 WL 1899616, at *12. While Section 227(c)(5), unlike Section 227(b)(3), permits imposition of vicarious liability, the relevant framework for evaluating whether such liability applies are the "traditional tort rules of vicarious liability."   *Id.* at *13.   Under those traditional rules, Plaintiff must plead facts that would allow the Court to infer that Defendants controlled and supervised the allegedly offending

---

[4] On May 9, 2013, the day after this Court entered summary judgment in *Mais*, the FCC issued a new ruling as to the scope of "on behalf of" liability under the TCPA.  Essentially reiterating its 2008 ruling (which this Court already rejected), the FCC stated that a seller may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.  FCC Declaratory Ruling 13-54, ¶ 1.  The difference in statutory language, however, between § 227(b)(1)(A) and § 227(c)(5) – a difference Congress is presumed to have intended – remains.  Accordingly, this Court's reasoned decision to decline granting *Chevron* deference to the FCC remains valid today.

actions of third party independent contractors.  Absent such allegations, Plaintiff's claim for violation of Section 227(c)(5) fails as a matter of law.

Vicarious liability's roots lie in common law agency principles of *respondeat superior*, and, as such, the hallmark of the doctrine is "control by the principal over the actions of the agent." *Tello v. Royal Caribbean Cruises, Ltd.*, No. 11–24503–CV, 2013 WL 1500573, at *6 (S.D. Fla. Mar. 30, 2013); *Folwell v. Bernard*, 477 So.2d 1060, 1063 (Fla. 2d DCA 1985) (vicarious liability sought to be imposed through principles of agency unwarranted in absence of evidence that purported principal dominates and controls purported agent).  "Absent control, there is no vicarious liability for the act of another, even for an employee." *Mais*, 2013 WL 1899616, at *13 (quoting *Vasquez v. United Enters. of Sw. Florida, Inc.*, 811 So. 2d 759, 761 (Fla. 3d DCA 2002)).  Significantly, this requisite level of control "is absent when the principal has retained a third party as an "independent contractor." *Id.* (citing *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 (11th Cir.1983)).

To satisfy the level of "control" necessary to establish vicarious liability, Plaintiff must allege that Defendants, as the principals, maintained control over, and supervised, key aspects of the undertaking. *See Mais*, 2013 WL 1899616, at *13 ("Courts have repeatedly emphasized that 'the primary factor to be decided with regard to whether an entity is an independent contractor is the degree of control exercised over the details of the work.'") (quoting *Paul N. Howard Co. v. Affholder, Inc.*, 701 So.2d 402, 404 (Fla. 5th DCA 1997)).  Here, although Plaintiff parrots the statutory language that the calls were made "on behalf of" Defendants, Compl. ¶ 14, the Complaint contains no factual allegations giving rise to a reasonable inference that Plaintiff is entitled to relief on this theory. *See Iqbal*, 556 U.S. at 678.  For instance, Plaintiff has neither alleged any facts regarding the relationship between the independent contractors and Defendants

– other than conceding they were indeed independent contractors – nor identified any conduct allegedly taken by such agents within the scope of this principal-agent relationship to further the alleged violations of the TCPA. *See Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011) ("The essence of the common law's test for whether an agent is an employee or an independent contractor is the control of details; that is, whether the principal has the right to control the manner and means by which the agent accomplishes the work.").

Nor could Plaintiff plausibly allege that Defendants exercised, or had the right to exercise, the requisite degree of control over the third party independent contractors. As in *Mais*, the contracts at issue confirm that these third parties were independent contractors. *Mais*, 2013 WL 1899616, at *13. As in *Mais*, the contracts further demonstrate that Defendants exercised no control over the manner and means of making outbound calls. The contracts required the independent contractors to comply with all federal rules and regulations, including the TCPA and Do Not Call Registries. *See* Hurowitz Decl., Ex. 1, § 6(a), § 6(d); Ex. 2, §§ 1.6(a), (e), § 3.1; Ex. 3, §§ 1.6(a), (e), § 3.1; Ex. 4, § 1(g). Thus, as in *Mais*, the independent contractors that actually conducted the telemarketing campaign "alone w[ere] responsible for compliance with applicable laws." 2013 WL 1899616, at *14. Further, by specifically contracting with the third parties to require their compliance with federal laws, Defendants took reasonable measures, consistent with the safe harbor provision set forth in Section 227(c)(5), to prevent violations of the TCPA.

Even setting aside the fact that these third parties were admittedly independent contractors and the contracts required those third parties to comply with the TCPA, Plaintiff still could not plausibly allege Defendants had the right and ability to control the allegedly unlawful calls. Far from being subject to day-to-day supervision and control, the independent contractors here exercised virtually unbridled discretion. As in *Mais*, the contracts are "silent as to the

manner in which" the independent contractors would "undertake" telemarketing activities.  2013 WL 1899616, at *14.  The contracts do not "require [the independent contractors] to use particular equipment (for example, a predictive dialer)" and do not "define the particular procedures that [they] would follow in communicating with [sales leads]" other than providing broad, general guidelines.  *Id.*  Nor do the contracts provide Newport Marketing with direct day-to-day oversight.  Thus, Newport Marketing simply could not have known whether an autodialer or similar device would be used to call persons listed on a Do-Not-Call registry.   As was the case in *Mais*, "by [their] silence, the contract[s] left such matters to [the independent contractors'] judgment and wisdom," *id.* at *14, so long as their conduct complied with applicable laws.  Under these circumstances, any theory of vicarious liability necessarily fails as a matter of law.  *See Paul N. Howard Co. v. Affholder, Inc.*, 701 So.2d 402, 404 (Fla. 5th DCA 1997) (individual was independent contractor, not agent, where he controlled "the details of the project"); *Kane Furn. Corp. v. Miranda*, 506 So.2d 1061, 1063–67 (Fla. 2d DCA 1987) (even though carpet seller drew carpet installation layout plan, carpet installers had unbridled discretion in performance of tasks, were engaged in their own independent installation business, and supplied their own equipment).

Simply put, Plaintiff has not and cannot articulate a plausible theory of vicarious liability in the face of the Agreements.  The Court should dismiss Count II of the Complaint with prejudice.

**B.    In The Alternative, Defendants Are Entitled To Summary Judgment On All Claims**

Even though Defendants are entitled to dismissal because of the dispositive shortcomings in the Complaint itself, should this Court conclude that it must look outside the Complaint to resolve the issues raised by this motion, it may do so by choosing to treat this as a motion for

summary judgment.  Fed. R. Civ. P. 12(d).  Pursuant to Fed. R. Civ. P. 56(b), both counts of Plaintiff's Complaint must be dismissed because they are completely dependent on Plaintiff's ability to impose vicarious liability.  Because Section 227(b) does not permit such liability and Newport Marketing's contracts with the third parties unequivocally establish that Defendants did not "make" the calls at issue, there is no genuine issue of fact with respect to Count I.  Because Plaintiff has no evidence, and can develop no evidence, to counter Defendants' evidence that Defendants lacked control and supervision over these third party contractors' telemarketing activities, there is no genuine issue of fact with respect to Count II.

Summary judgment prior to the commencement of discovery is warranted where, as here, discovery would not lead to any genuine issues of material fact.  *See, e.g., Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 844 (11th Cir. 1989) (Rule 56 does not "require that a party wait until discovery has taken place"); *Walsh v. Heilmann*, 472 F.3d 504, 505 (7th Cir. 2006) ("Summary judgment need not await discovery when the material facts are undisputed"); *United States v. $5,644,540.00 in U.S. Currency*, 799 F.2d 1357, 1364 (9th Cir. 1986) (affirming grant of summary judgment where there had been no discovery and where district court concluded that discovery would not lead to sufficient facts to establish issue of material fact); *Robak v. Abbott Labs.*, 797 F. Supp. 475, 476 (D. Md.1992) (granting summary judgment in the "early stages" of discovery because "no material fact [could] be genuinely disputed under the allegations of the Complaint").  As the Eleventh Circuit has emphasized, "there is no reason to assume that a district judge will ... refuse to rule on a motion for summary judgment at an early stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery.  In fact, we expect that district judges will be open to such motions."  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1188 (11th Cir. 2005).  Because the

evidence germane to this motion is undisputed, discovery would not lead to any genuine issues of material fact and is therefore unnecessary.

With respect to Count I, as described in detail, *supra*, Plaintiff cannot show that any of Defendants made the calls at issue.  Confirming what Plaintiff has already effectively admitted, Newport Marketing contracted with third-parties to make the calls at issue.  *See* Hurowitz Decl., Exs. 1-4.  And in practice, that is precisely what happened – independent contractors – and not anyone from Newport Marketing, made the calls.  *See* Hurowitz Decl., ¶¶ 3, 6.  As this Court recently held, Section 227(b)(1)(A)(iii) liability extends only to the party who actually made the calls.  *See supra*.  Consequently, Defendants are entitled to summary judgment as to Plaintiff's First Cause of Action because they did not engage in any conduct giving rise to liability under Section 227(b)(1).

With respect to Count II, Plaintiff has no evidence, and can develop no evidence, to show that Defendants exercised the necessary degree of control and supervision over these third party contractors' telemarketing activities.  As demonstrated in the prior section, undisputed facts bring this case squarely within *Mais*.  As in *Mais*, the contracts here show that:  (1) the third parties were independent contractors; (2) Defendants "did not require [the independent contractors] to use particular equipment (for example, a predictive dialer)" other than that such use comply with federal law; (3) Defendants "did not define the particular procedures that [the independent contractors] would follow in communicating with [sales leads]" other than providing general guidelines; and (4) Defendants explicitly made the independent contractors "responsible for doing things in accordance with the law."  2013 WL 1899616, at *14.  Thus, as in *Mais*, "[i]t is clear that nothing in the parties' agreement reflects any control by [Defendants] over [the independent contractors'] decision to [allegedly] employ modes of [sales calls] that run

afoul of the TCPA." *Id.*

In practice, the actual campaigns were consistent with these contracts.  As set forth in the declaration of Newport Marketing President Steven Hurowitz, Newport Marketing in fact exercised no control over the telemarketing methods of the independent contractors.  Newport Marketing did not direct, control, advise, lead or oversee any of the independent contractors' actions or efforts in generating sales leads.  *See* Hurowitz Decl., ¶ 6.  Newport Marketing made clear that those contractors were responsible for compliance with the TCPA and all other applicable laws and regulations.  *See* Hurowitz Decl., Ex. 1, § 6(a), § 6(d); Ex. 2, §§ 1.6(a), (e), § 3.1; Ex. 3, §§ 1.6(a), (e), § 3.1; Ex. 4, § 1(g).  Newport Marketing did not instruct independent contractors to use auto-dialers or any specific type of device in making telephone calls in violation of the TCPA and in one contract expressly stated that using automatic or predictive dialers to dial wireless numbers was prohibited.  Hurowitz Decl., ¶ 5, Ex. 1, Ex. B, § 4.  Newport Marketing did not, beyond providing a few general guidelines, direct the means and manner by which independent contractors conducted marketing campaigns.  *See* Hurowitz Decl., Exs. 1-4.  Newport Marketing did not – and had no contractual right  to –monitor or otherwise supervise the day-to-day activities of the independent contractors.  *See id.*  Accordingly, Newport Marketing did not know of, much less authorize, the allegedly offending conduct.

Under these facts, Defendants cannot be held vicariously liable under the TCPA.  *See Mais*, 2013 WL 1899616, at *14 (where undisputed evidence showed that independent contractor "made all of the key decisions creating liability under the TCPA all on its own" and defendants "did not control the relevant aspects of [the independent contractors'] conduct or procedures," defendants could not be held vicariously liable); *King v. Hall*, 740 So. 2d 1241 (Fla. 3d DCA 1999) (affirming summary judgment in favor of defendant on vicarious liability claim where

contract between defendant and independent contractor conferred defendant only with control "as to the results which were to be obtained, and did not control [the contractor's] performance with regard to the details of his engagement nor his day-to-day activity"); *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 637 F. Supp. 2d 1029, 1040-41 (M.D. Fla. 2009) (granting summary judgment in favor of franchisor defendant on vicarious liability claim because franchise agreement demonstrated franchisor did not control day-to-day operations of franchise); *Delco Indus., Inc. v. Dep't of Labor & Emp't Secur.*, 519 So. 2d 1109, 1110 (Fla. 4th DCA 1988) (telemarketers were not employees of seller even though seller monitored them to assure accurate representation of product because seller did not otherwise direct their activities); *Miami Herald Publ'g Co. v. Kendall*, 88 So. 2d 276 (Fla. 1956) (newspaper not liable for negligence of delivery-person where "any control exercised by [the newspaper] was directed to the result – not the manner of performance").

In sum, if not dismissed pursuant to Fed. R. Civ. P. 12(b)(6), summary judgment against Plaintiff should be entered pursuant to Fed. R. Civ. P. 56(b) because Plaintiff's case is completely dependent on the imposition of vicarious liability. With respect to Section 227(b)(1)(A)(iii), vicarious liability is not even a legally cognizable theory of liability. With respect to Section 227(c)(5), the imposition of vicarious liability would require evidence that Newport Marketing controlled the manner in which the calls at issue were made and the equipment that was used to send those calls, including directing that Plaintiff be called repeatedly using an autodialer despite being on the National Do Not Call Registry. There is, and there will be nothing, in the record that could possibly establish that Newport Marketing exercised that level of control. Accordingly, Defendants respectfully submit that summary judgment should be entered in their favor on Plaintiff's claims.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court dismiss all Counts of the Complaint with prejudice pursuant to Fed. R. Civ. P 12(b)(6) or, in the alternative, enter summary judgment pursuant to Fed. R. Civ. P. 56, in Defendants' favor on all Counts.

Dated:  September 3, 2013                    Respectfully submitted,

By:  */s/Rachel B. Mervis*
Rachel B. Mervis (Florida Bar No. 0086147)
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida  33131-5341
Tel:  (305) 423-8500
Fax: (305) 437-8131
rachel.mervis@dlapiper.com

Joshua Briones (admitted *pro hac vice*)
Anahit Tagvoryan (admitted *pro hac vice*)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 – North Tower
Los Angeles, California  90067
Tel:  (310) 595-3076
Fax: (310) 595-3376
joshua.briones@dlapiper.com
ana.tagvoryan@dlapiper.com

and

Franklin L. Zemel (Florida Bar No. 816620)
Lori Adelson (Florida Bar No. 0196428)
ARNSTEIN & LEHR LLP
200 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida  33301
Tel:  (954) 713.7600
Fax: (954) 713-7710
franklin.zemel@arnstein.com
ladelson@arnstein.com
*Attorneys for Defendants, Newport Marketing, LLC,*
*Newport Hospitality, LLC and Newport Vacations*
*Manager, LLC*

## <u>CERTIFICATE OF SERVICE</u>

We hereby certify that on September 3, 2013, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Rachel B. Mervis*
Rachel B. Mervis

**SERVICE LIST**
*Manuel Zelaya v. Newport Marketing, LLC, Newport Hospitality, LLC,*
*and Newport Vacations Manager, LLC*
**Case No. 13-Civ-61139-Scola/Seltzer**

| | |
|---|---|
| Stefan Louis Coleman<br>LAW OFFICES OF STEFAN COLEMAN, PLLC<br>201 South Biscayne Boulevard, 28th Floor<br>Miami, Florida  33131<br>Tel:  (877) 333-9427<br>Fax: (888) 498-9846<br>law@stefancoleman.com<br><br>J. Dominick Larry<br>EDELSON LLC<br>350 North LaSalle<br>Suite 1300<br>Chicago, Illinois  60654<br>Tel:  (312) 572-7212<br>Fax: (312) 589-6378<br>nlarry@edelson.com<br><br>Scott David Owens<br>SCOTT D. OWENS, P.A.<br>664 East Hallandale Beach Boulevard<br>Hallandale, Florida  33009<br>Tel:  (954) 589-0588<br>Fax: (954) 337-0666<br>scott@scottdowens.com<br><br>*Attorneys for the Plaintiff, Manuel Zelaya* | Rachel B. Mervis (Florida Bar No. 0086147)<br>DLA PIPER LLP (US)<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, Florida 33131-5341<br>Tel:  (305) 423-8500<br>Fax: (305) 437-8131<br>rachel.mervis@dlapiper.com<br><br>Joshua Briones (admitted *pro hac vice*)<br>Anahit Tagvoryan (admitted *pro hac vice*)<br>DLA PIPER LLP (US)<br>2000 Avenue of the Stars<br>Suite 400 – North Tower<br>Los Angeles, California  90067<br>Tel:  (310) 595-3076<br>Fax: (310) 595-3376<br>joshua.briones@dlapiper.com<br>ana.tagvoryan@dlapiper.com<br><br>Franklin L. Zemel (Florida Bar No. 816620)<br>Lori Adelson (Florida Bar No. 0196428)<br>ARNSTEIN & LEHR LLP<br>200 East Las Olas Boulevard, Suite 1700<br>Fort Lauderdale, Florida 33301<br>Tel:  (954) 713.7600<br>Fax: (954) 713-7710<br>franklin.zemel@arnstein.com<br>ladelson@arnstein.com<br><br>*Attorneys for Defendants, Newport Marketing,*<br>*LLC, Newport Hospitality, LLC and Newport*<br>*Vacations Manager, LLC* |