IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:13-CV-61139-RNS

MANUEL ZELAYA, individually and on behalf of all others similarly situated,

   *Plaintiff*,

v.

NEWPORT MARKETING, LLC, a Florida limited liability company, NEWPORT HOSPITALITY, LLC, a Florida limited liability company, and NEWPORT VACATIONS MANAGER, LLC, a Florida limited liability company,

   *Defendants*.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

   In this putative class action, Plaintiff Manuel Zelaya alleges that Defendants Newport Marketing, LLC, Newport Hospitality, LLC, and Newport Vacations Manager, LLC (collectively "Newport" or "Defendants") repeatedly placed automated phone calls to his cellular phone for the purpose of advertising their time-share business in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Defendants have moved to dismiss Plaintiff's claims, or, in the alternative, for summary judgment in their favor, based on the notion that "third-party independent contractors actually conducted the conduct at issue" (i.e., made the calls to Plaintiff and the putative class). From there, Defendants contend that (1) Plaintiff's claim under § 227(B)(1)(A) fails because they supposedly cannot be held liable for the acts of third parties, and (2) Plaintiff's claim under § 227(c)(5) fails because he has not established (and cannot establish) that Defendants controlled the actionable conduct. Defendants further contend—in a

1

supplemental filing—that dismissal of the claim under § 227(c)(5) is required because that section of the TCPA only regulates calls to landline or residential telephones, and Plaintiff alleges that he received the challenged calls on his cell phone. As explained below, Defendants' arguments do not withstand scrutiny because they are based on a fundamental (and intentional) mischaracterization of the Complaint's allegations.

Specifically, Defendants contend that Plaintiff "admitted" that the calls at issue were made by an unnamed third party. But Plaintiff has made no such admission. Instead, the Complaint merely notes that when confronted, Defendants *claimed* that the calls were the fault of a third party. Notwithstanding, Plaintiff's allegations make clear that he seeks to hold Defendants directly liable under § 227(b)(1)(A) because, despite their protests, they were the ones that actually called him.

As for the claim under § 227(c)(5), Defendants' arguments likewise fall short because Plaintiff pleads facts sufficient to state a claim for relief under that section of the TCPA for calls to his cell phone. And despite Defendants' insistence, the undisputed facts—including Defendants' record evidence—do not establish that a third-party was responsible for making the unlawful calls.[1] Moreover, the Court simply cannot enter judgment based on the evidence adduced by Defendants without first giving Plaintiff the opportunity to obtain the discovery he needs to refute such evidence. Accordingly, Defendants' motion, both as a motion to dismiss and

---

[1] If the Court does determine that third parties made the calls at issue, Plaintiff recognizes that this Court has previously found vicarious liability unavailable for claims brought under § 227(b)(1)(A), *see Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-Civ, 2013 WL 1899616 (S.D. Fla. May 8, 2013). Plaintiffs also recognize that the 11th circuit has granted the *Mais* plaintiff leave to file an interlocutory appeal of the *Mais* decision. *See Mais*, Dkt. 218 (Sept. 4, 2013). Accordingly, Plaintiff respectfully asserts and preserves for appeal the argument that the *Mais* decision was incorrect, and that common law principles of vicarious liability apply to claims brought under § 227(b)(1)(B). *See Bridgview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *4 – 5 (N.D. Ill. Mar. 19, 2013).

as a motion for summary judgment, fails and should be denied.

## FACTUAL BACKGROUND

In 2007, Plaintiff registered his cellular telephone number with the National Do Not Call Registry. (SOF[2] ¶ 10.) In October 2010, Defendants called Plaintiff's cellular telephone to advertise the Newport Beachside Hotel & Resort (the "Hotel"). (SOF ¶ 13.) Plaintiff had never provided his phone number to Defendants, nor had he ever consented to receiving telemarketing calls from them. (SOF ¶¶ 11 – 12.) Plaintiff received similar calls from Defendant in April, May, and June of 2011. (SOF ¶ 14). On June 8, 2011, Plaintiff contacted Defendants to inform them that the telemarketing calls were unwanted and unauthorized, and to request that Defendants stop making them. (SOF ¶¶ 15 – 16.) Nonetheless, in August 2011, Defendants again called Plaintiff's cell phone to market the Hotel. (SOF ¶ 17.) After again contacting Defendants, Plaintiff received a communication from Defendants' counsel indicating that he would no longer receive telemarketing calls from Defendants. (SOF ¶¶ 18 – 19.)

Notwithstanding their promises, on January 25, 2012, Defendants made yet another telemarketing call to Plaintiff, this time telling him that he was the "winner" of a promotional package that included a free trip as part of a celebration of Defendants' 40th anniversary and the Hotel's recent renovation. (SOF ¶¶ 20 – 21.) Later that same day, Plaintiff received another telemarketing call from Defendants, repeating the promotional offer, but adding that the offer was sponsored by Visa and MasterCard. (SOF ¶ 22.) The next day, Plaintiff again contacted Defendants and informed them that they were violating his rights under the TCPA and requested that they immediately stop calling him. (SOF ¶¶ 23 – 24.)

---

[2]   As used throughout this Opposition, "SOF" refers to Plaintiff's Local Rule 56.1 Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment, filed concurrently herewith.

3

The day after that, Defendants' counsel contacted plaintiff and told him that Newport subscribed to the Do-Not-Call Registry, that his name had been added to their internal do-not-call list, and that his name had been circulated to Defendants' third-party telemarketing partners and put on their do-not-call lists. (SOF ¶¶ 25 – 26.) Despite those promises, on February 9, 2012, Defendants placed another call to Plaintiff's cell phone, telling him that he had won a free dinner at a restaurant in the Hotel, and that he needed to visit the hotel to claim his prize. (SOF ¶¶ 27 – 28.) Defendants made similar calls to Plaintiff on March 28th and March 31st of 2012. (SOF ¶ 29.)

Each of Defendants' calls to Plaintiff was made using an automatic telephone dialing system: equipment (hardware and software) with the capacity to store or produce and dial numbers at random, in sequential order, or from a database of numbers. (Dkt. 1 at ¶¶ 2, 15, 45.) Each time he was called by Defendants, Plaintiff informed Defendants that his phone number was listed in the National Do Not Call Registry, asked them to place his information on their internal do-not-call list, and asked them to mail him a copy of their TCPA-required do-not-call policy. (SOF ¶¶ 30 – 31.) Despite these requests, Defendants never provided Plaintiff with a copy of their do-not-call policy. (SOF ¶ 32.)

As a result of Defendants' continued unlawful telemarketing calls, Plaintiff suffered actual harm in the form of the aggravation and nuisance caused by the calls, wasted time receiving the calls and attempting to put a stop to them, and invasion of his privacy.

## ARGUMENT

**I.      Defendants' motion to dismiss fails because the Complaint alleges that Defendant violated the TCPA, and does not depend on a theory of vicarious liability.**

"Under the notice-pleading standard, [courts] no longer require the hyper-technical code pleadings of ages past." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). Instead, a

4

complaint must only "contain enough facts to make a claim for relief plausible on its face." *Id.* at 1324 – 25. In determining whether a claim is plausible, the Court "accept[s] all well-pleaded facts as true, and . . . make[s] all reasonable inferences in favor of the plaintiff." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 631 n.5 (11th Cir. 2010).

Defendants ask the Court to dismiss Plaintiff's Complaint because he cannot establish vicarious liability and because his second claim relies on an invalid FCC regulation. Defendants' motion to dismiss fails for three reasons. First, Plaintiff seeks to hold Defendants liable directly for violating the TCPA, so vicarious liability is a non-issue. Second, the FCC's do-not-call regulations are valid and Plaintiff properly pleads their violation by alleging Defendants made unauthorized calls to his cell phone. And third, Defendants' extrinsic documents—offered to establish that Defendants did not make the calls at issue and did not have control over those who supposedly did—cannot be considered on a Rule 12(b)(6) motion.

### A. Plaintiff seeks to hold Defendants primarily, rather than vicariously, liable.

Defendants' entire challenge to Plaintiff's complaint depends on a fundamental misreading of it. That is, Defendants contend that paragraph 26 of Plaintiff's Complaint "effectively concedes [that] none of the Defendants actually made any of the calls in question." (Def. Br. at 9) (emphasis removed). From this, Defendants pretend that Plaintiff is proceeding on a vicarious liability theory that, according to Defendants, fails as to Count I because that claim does not allow for vicarious liability, and as to Count II because Plaintiff supposedly cannot establish the control necessary for vicarious liability.

The problem with Defendants' theory is that paragraph 26 does not concede that a third party placed the unlawful calls to Plaintiff's phone. In paragraph 26, Plaintiff merely alleges:

> The following day, Plaintiff contacted Defendants and *informed Defendants that they were violating the TCPA* and specifically requested that they no longer place telephone calls to him. On January 27, 2012,

5

> *legal counsel for Defendants contacted plaintiff and indicated* that (1) Newport subscribed to the Do Not Call Registry; (2) that Plaintiff's name had been added to Newport's internal do-not call list; and (3) that Newport had circulated Plaintiff's information to its third party independent contractors who were authorized to make such calls to be placed on their internal do-not call lists.

(Compl. ¶ 26) (emphasis added). Paragraph 26 contains no admission that third-parties are responsible for making the unauthorized calls. Instead, it states that *Defendants' counsel* represented that it had contracted with third parties to handle its telemarketing efforts and that these third-parties had called Plaintiff. Nowhere does Plaintiff allege, much less concede, that those self-serving representations were truthful. In fact, Plaintiff repeatedly alleges that Defendants were the ones that placed the repeated unlawful calls to his cellular phone. (*See* Compl. ¶¶ 15, 22 – 29, 44 – 48, 55, 58.)[3] Accordingly, because Plaintiff asserts that *Defendants* made the phone calls at issue, Defendants' vicarious liability challenges are irrelevant, and Plaintiff's claims—both under §§ 227(B)(1)(A) and 227(c)(5)—are sufficiently pleaded and should survive.

>    **B.    Plaintiff can assert "do not call" claims for calls made to his cellular phone, and Defendants' supplemental argument to the contrary cannot invalidate FCC regulations.**

In their proposed supplement to their Motion,[4] Defendants argue that Plaintiff's claim under § 227(c)(5) "turns on compliance with FCC regulations promulgated under (c)(1)," and his claim fails because "FCC do-not-call regulations proscribing calls to cellular phones are beyond the Commission's statutory mandate." (*See* Dkt. 30-1 ("Def. Supp.") at 2 – 3.) In essence, then,

---

[3]    If the Court has any doubts about whether the calls were made by Defendants or not, it must resolve them in Plaintiff's favor. *See World Holdings, LLC v. Fed. Republic of Germany*, 701 F.3d 641, 649 (11th Cir. 2012) (In deciding motion to dismiss, Court "must accept all factual allegations in the Complaint as true and construe them in the light most favorable to the plaintiff.").

[4]    Although Plaintiff hereby responds to the arguments made therein, Plaintiff maintains that Defendants' Motion to Supplement, (Dkt. 30), should be denied. (*See* Dkt. 31.)

6

Defendants are contending that the FCC regulation applying § 227(c)'s protections to cellular phone subscribers is invalid. (*Id.* at 3.) Defendants are mistaken, as the FCC's regulations prohibiting calls to cell phones registered to the National do-not-call list are valid and enforceable.

"When Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' [*Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 843 – 44 (1984)], and any ensuing regulation is binding in courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *U.S. v. Mead Corp.*, 533 U.S. 218, 228 (2001). In assessing the validity of a regulation, "the well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (internal quotations omitted). Here, Defendants do not contend that the FCC's Regulation was procedurally defective or arbitrary and capricious, but rather that it is "directly contrary" to congressional edict. (Def. Supp. at 3.) Defendants' contention, which has already been addressed and rejected by the FCC, is entirely without merit.

Defendants cannot establish that the FCC's regulation is manifestly contrary to the TCPA. In promulgating 47 C.F.R. § 64.1200(e), the FCC rejected a challenge to its decision to grant do-not-call protections to wireless subscribers. There, Nextel Communications, Inc. argued that Congress only gave the FCC authority to promulgate do-not-call regulations applicable to "residential telephone subscribers," and wireless subscribers would only be covered in "those circumstances where wireless service actually has displaced a residential land line, and functions as a consumer's primary telephone service." *Rules and Regulations Implementing the Telephone*

7

*Consumer Protection Act (TCPA) of 1991*, 68 Fed. Reg. 44144-01, at ¶ 12 (July 25, 2003).

The FCC rejected Nextel's position as "far too restrictive and inconsistent with the intent of section 227" because "there is nothing in section 227 to suggest that *only* a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA." 68 Fed. Reg. 44144-01, at ¶ 13. As further support for its position, the FCC noted that "[i]t is well established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones," and that "there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service." *Id.*

Confirming that the neither the TCPA's text, its purpose, nor its legislative history support Defendants' efforts to deny the 91% of the country's adults the protections of the Do-Not-Call Registry,[5] numerous courts have confirmed the validity of TCPA do-not-call claims brought by cell phone users. *See, e.g.*, *Kazemi v. Payless Shoesource, Inc.*, No. C 09-5142 MHP, 2010 WL 963225, at *2 – 3 (N.D. Cal. Mar. 16, 2010) (denying Rule 12(b)(6) motion where plaintiff alleged that defendant called his phone due to its "fail[ure] to institute procedures for maintaining lists of individuals who request not to receive solicitation calls in violation of a regulation prescribed under section 227(c)"); *Mey v. Honeywell Intern., Inc.*, No 12:12-1721, 2013 WL 1337295, at *4 – 6 (S.D. W. Va. Mar. 29, 2013) (denying Rule 12(b)(6) motion to dismiss § 227(c) claim for calls made, *inter alia*, to the plaintiff's cellular phone).

Ultimately, nothing in the TCPA prohibits the FCC from granting do-not-call protections to wireless subscribers, and because doing so furthers the purposes of the TCPA, the FCC's

---

[5] *See* Lee Rainie, *Cell phone ownership hits 91% of adults*, Pew Research Center: FactTank (June 6, 2013), http://www.pewresearch.org/fact-tank/2013/06/06/cell-phone-ownership-hits-91-of-adults/ (last accessed Oct. 4, 2013).

8

regulation is not "manifestly contrary" to the TCPA. Accordingly, Defendants' interpretation of the statute—which is even more restrictive than the "far too restrictive" interpretation proposed by Nextel—fails, and Plaintiff's section 227(c)(5) claim survives.

### C. Defendants' extrinsic documents cannot properly be considered on a Rule 12(b)(6) motion.

Attempting to avoid Plaintiff's allegations of direct liability, Defendants introduce extrinsic documents in hopes of convincing the Court that Plaintiff can only proceed, if at all, on a vicarious liability theory. (Def. Mot. at 4 – 6, 13, 14.) Defendants' attempt to rely on extrinsic documents in support of dismissal is improper and should not be allowed.

A district court may only consider documents outside the four corners of the Complaint where the materials are "(1) central to the plaintiff's claim, *and* (2) [their] authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of America Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (emphasis added). Typically, documents "central to the plaintiff's claim" are those specifically referenced, or documents that formed the relationship between the plaintiff and the defendant. *Id.* On the other hand, documents that are not specifically referenced by the Complaint and did not form the basis of the relationship between the plaintiff and the defendant are typically not considered on a motion to dismiss. *See, e.g.*, *Pelkey v. McNeil Consumer Healthcare*, No. 10-61853-CIV, 2011 WL 677424, at *3 (S.D. Fla. Feb. 16, 2011) (refusing to consider product formula when not referenced by false advertising complaint); *Belik v. Carlson Travel Group, Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011) (refusing to consider cruise line ticket referred to by complaint but not relied on to establish any element of plaintiff's claim).

Judge Altonaga's opinion in *Belik* is particularly instructive here. There, Carnival Cruise Lines attempted to introduce a ticket contract to defeat the plaintiff's allegations that an agency relationship existed between Carnival and another defendant. *Belik*, 864 F. Supp. 2d at 1311.

9

Carnival contended that Plaintiff mentioned the ticket contract in his complaint, and therefore it was incorporated by reference and could properly be considered on the pleadings. *Id.* The Court, however, rejected the defendant's attempt to introduce additional materials, holding that the plaintiff's mere mention of additional documents did not incorporate them, as "he [did] not *rely* on the contract for any of his claims," and it therefore was not central to his claim. *Id.*

Here, consideration of Defendants' extrinsic documents would be even more improper than the consideration of the ticket contract in *Belik*. Indeed, while the plaintiff in *Belik did* refer to documents Carnival attempted to introduce, Defendants here attempt to introduce documents that Plaintiff never referred to, mentioned, or so much as even alluded to in the Complaint. At most, Zelaya alleges that Defendants told him that they had hired third-party marketing companies to make the calls, but, as stated above, those representations contradict the allegations in the Complaint, and Zelaya neither accepts their truth nor relies on them in any way. Thus, the contracts between Newport Marketing and various telemarketers—several of which were entered into *after* Defendants robodialed Zelaya, (*Compare* Dkt. 26-1 *with* SOF ¶¶ 13 – 14, 17)—do not in any way form the basis of the Complaint and thus, cannot be relied upon as part of Defendants' motion to dismiss. Likewise, it strains credulity for Defendants to contend that their President's self-serving declaration is somehow "central to the plaintiff's claim."

Accordingly, because Defendants' extrinsic documents cannot, by any stretch of the imagination, be considered central to Zelaya's claims, they cannot be considered on a motion to dismiss, and if they are to be considered by the Court, Defendants' motion must—as they effectively concede, (*see* Def. Mot. at 14 – 18)—be treated as one for summary judgment.

**II.     Defendants' motion for summary judgment fails because Plaintiff's claims are directly against Defendants, and Defendants' records fail to establish as a matter of law that they did not make the calls at issue.**

Having gone outside the acceptable bounds of a motion to dismiss, Defendants, in the

10

alternative, move for summary judgment. Defendants' motion fails for two reasons. First, it is procedurally improper; there is simply an inadequate record to conclude that Defendants are entitled to judgment as a matter of law. Second, while Defendants contend that the undisputed evidence shows *both* that they did not make the calls *and* that Plaintiff cannot establish vicarious liability, the facts, including Defendants' records, fail to establish that Defendants did not make the calls. Thus, Defendants' argument for summary judgment fails in the first instance. As such, disputed issues of material fact exist and summary judgment is inappropriate.

>  A.   **The Court should not convert Defendants' motion to dismiss into a motion for summary judgment without allowing Plaintiff the discovery necessary to prove his claims.**

"Summary judgment is premature when a party is not provided a reasonable opportunity to discover information essential to his opposition." *Smith v. Florida Dep't of Corrections*, 713 F.3d 1059, 1064 (11th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); Fed. R. Civ. P. 56(d)); *see also WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988) ("[S]ummary judgment may only be decided upon an adequate record."). Because Plaintiff has "sufficiently stated a plausible cause of action," *see* Section I *supra*, "he is entitled to some meaningful discovery." *Smith*, 713 F.3d at 1064. Where a plaintiff has "had no opportunity to conduct discovery," he "cannot be expected to consummately respond to the factual contentions Defendants raise in their Motion," and "summary judgment should be denied as premature." *Royal Palm Properties, LLC v. Premier Estate Properties*, No. 13-80040-CIV, 2013 WL 3712339, at *1 (S.D. Fla. July 12, 2013).

Summary judgment would be especially improper here. Plaintiff has not had the opportunity to engage in *any* formal discovery, yet Defendants ask this Court to enter judgment against him on the basis of contracts formed after the conduct at issue and the untested attestations of Defendants' President. Plaintiff has not had an opportunity to challenge the

accuracy and credibility of Defendants' President's statements, nor has he been able to obtain *any* information on Defendants' in-house telemarketing activities. (*See* Dkt. 26-1 at 12.) Even assuming *arguendo* that third parties made the calls, those parties are unknown at this point and have not been named, Plaintiff has not been able to examine the contracts between Defendants and those third parties, and Plaintiff has not had an opportunity to discover communications between Defendants and those parties relating to telemarketing calls. Absent such critical information, there is simply not an "adequate record" for disposing of Plaintiff's claims. *See Smith*, 713 F.3d at 1064.

> **B. Even if procedurally proper, Defendants' summary judgment motion fails because the undisputed evidence does not show that a third party made the unlawful calls to Zelaya's phone.**

Even if Defendants' motion were proper, it would still fail, because it does not establish that a third party made the calls at issue. Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Weiner v. Carnival Cruise Lines*, 11-CV-22516, 2012 WL 5199604, at *2 (S.D. Fla. Oct. 22, 2012) (quoting *Alabama v. N. Carolina,* 560 U.S. 330, 130 S. Ct. 2295, 2308 (2010)). In deciding a motion for summary judgment, "the Court must view the evidence in the light most favorable to the nonmovant and it may not weigh conflicting evidence to resolve disputed factual issues." *Id.* (citing *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 – 59 (1970); *Skop v. City of Atlanta, Ga.,* 485 F.3d 1130, 1140 (11th Cir.2007)).

Here, while Defendants presented a variety of facts in support of summary judgment, only the following are undisputed:

- Newport Marketing markets time-share condo units, (SOF ¶ 1);
- the telephone numbers identified in the Complaint do not currently belong to

> Defendants, (SOF ¶ 3);
>
> - Newport Marketing entered into agreements with third-party telemarketers, (SOF ¶ 4);
>
> - the agreements refer to the third-parties as "independent contractors," (SOF ¶ 5);
>
> - the agreements do not require a certain type of technology to be used to make outbound calls, (SOF ¶ 8); and
>
> - one agreement with a telemarketer "expressly provides that using automatic or predictive dialers to dial wireless numbers is prohibited," (SOF ¶ 8).

The rest of Defendants' purportedly dispositive facts are disputed. (*See* SOF ¶¶ 2, 4 – 9.) Thus, the undisputed facts—the only facts that can be properly considered on a summary judgment motion[6]—fail to establish that a third party, rather than Defendants, made the unlawful calls to Plaintiff's phone.[7] In fact, Defendants' evidence actually suggests that Defendants made the calls.[8]

To start, while Defendants present contracts with third-party telemarketers, Defendants do not identify the third parties that supposedly made the calls, nor do they provide the contracts under which the calls were made (indeed, most of the contracts were executed subsequent to the last of the calls to Plaintiff). If one or more third parties had made the calls, it would stand to reason that Defendants would have identified them and presented the contracts governing their relationship. Further still, Defendants' documents demonstrate that they performed in-house telemarketing activities, proving that Defendants had the capacity and procedures in place to

---

[6] *See Warrior Tombigee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1298 (11th Cir. 1983) (finding district court erred by "resolv[ing] factual disputes by weighing the conflicting evidence put before it").

[7] Importantly, none of Defendants' documents even purport to identify the specific third parties that made the calls, nor do they demonstrate that Defendants did not also make in-house telemarketing calls during the relevant time period. (*See generally* Dkt. 26-1.)

[8] And further, as discussed above, Plaintiff's Complaint does not allege that Defendant actually used third parties to make the calls at issue. (*See* Section I.A. *supra*.)

13

make the unlawful calls to Plaintiff. (Dkt. 26-1 at 12.) In sum, the calls to Plaintiff were, on their face, made by Defendants; Defendants present no proof that they did not make the calls; and Defendants' own evidence shows their capacity and processes for making calls like the ones made to Plaintiff.

Thus, neither Plaintiff's Complaint, the undisputed evidence, nor the disputed evidence establishes as a matter of law that the calls to Plaintiff's phone were made by third parties, rather than by Defendants themselves. *See Atheists of Florida, Inc. v. City of Lakeland, Fla.*, 713 F.3d 577, 589 (11th Cir. 2013) (On summary judgment motion, Court "view[s] all facts and reasonable inferences drawn therefrom in the light most favorable to . . . the non-moving party."). As such, genuine issues of material fact abound as to whether Defendants may be held directly liable for violation of the TCPA, and entry of summary judgment in Defendants' favor would be improper.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in its entirety, and grant Plaintiff such other further relief as it deems reasonable and necessary.

Dated: October 4, 2013                     Respectfully submitted,

 

**Manuel Zelaya,** individually and on behalf of all others similarly situated,

By: /s/  Scott D. Owens
One of Plaintiff's Attorneys

Scott D. Owens, Esq.
LAW OFFICES OF SCOTT D. OWENS, ESQ.
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33309
scott@scottdownes.com

By: /s/ J. Dominick Larry
One of Plaintiff's Attorneys

Rafey S. Balabanian
Ari J. Scharg
Christopher Dore
J. Dominick Larry (admitted *pro hac vice*)
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
rbalabanian@edelson.com
ascharg@edelson.com
cdore@edelson.com
nlarry@edelson.com

Stefan Coleman, Esq.
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S. Biscayne Blvd., 28th Floor
Miami, Florida 33131
law@stefancoleman.com

*Attorneys for Plaintiff and the Putative Classes*

## CERTIFICATE OF SERVICE

      I, Scott D. Owens, an attorney, certify that on October 4, 2013, I served the above and foregoing ***Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment,*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this, October 4, 2013.

                                                          s/ Scott D. Owens